UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NICHOLAS STEVEN ZASTROW,<br><br>Defendant. | 4:16-CR-40004-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

**NATURE AND PROCEDURE OF CASE**

Defendant, Nicholas Steven Zastrow, is charged with possession of an unregistered firearm under 26 U.S.C. §§ 5861(d), 5845(a)(1), and 5871. Zastrow moves to suppress all evidence seized following a warrantless search of his residence. Docket 26. He argues that the evidence was obtained in violation of the Fourth Amendment to the United States Constitution. The motion was referred to United States Magistrate Judge Veronica L. Duffy for a report and recommendation under 28 U.S.C. § 636(b)(1)(B).

An evidentiary hearing was held on June 7, 2016. Two witnesses testified and several exhibits were received at the hearing. The magistrate judge issued a report and recommended denial of Zastrow's motion to suppress. Docket 34. Zastrow timely filed an objection to the report and recommendation. Docket 35. For the following reasons, the court adopts the report and recommendation.

**LEGAL STANDARD**

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1)(A); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

**FACTS**

Neither party objected to the magistrate judge's findings of fact. The court has reviewed the record and adopts the magistrate judge's factual findings in full. For ease of reference, the court provides the facts as found by the magistrate judge:

> At 5:43 a.m. on September 26, 2015, Brookings Police Department responded to a residence occupied by Mr. Zastrow and his friend, Cody Pomerenke, after a report of a disturbance. Both Mr. Zastrow and Pomerenke were arrested for felony aggravated assault, among other criminal offenses. Mr. Pomerenke was intoxicated at the time of his arrest. The residence was a rental property. Pomerenke's name was the only name on the lease. Mr. Zastrow had been staying with Pomerenke, with Pomerenke's permission, for some unknown period of time prior to September

26. Officer Smith testified he never asked Pomerenke if Mr. Zastrow was paying rent in return for staying at the residence.

 The residence consisted on the main floor of one enclosed bedroom with a door which Pomerenke used as his bedroom. The remainder of the house was an open living room/dining room area that also flowed into the kitchen with no partition or door. The living room/dining room area had a two-cushion loveseat glider couch, some chairs, and a table with kitchen chairs arranged around it. The loveseat was the only item of furniture suitable for sleeping in the combined room. The floor in the living room/dining room had piles of hunting gear, clothing, and miscellaneous items. There was plastic shelving set up that was full of miscellaneous items including ammunition cans. There was no television in the living room/dining room. No part of the living room/dining room area was partitioned, screened, or curtained off to create privacy. From the front door, one could see directly into the living room/dining room area. There were two doors to the residence, but Pomerenke was required to traverse through the living room/dining room area in order to reach his own bedroom--the door to Pomerenke's bedroom was located in the middle of the living room/dining room. Likewise, one would have to traverse the living room/dining room area to reach the kitchen or the basement stairs.

 Both men appeared in state court and were granted bond. A condition of bond was that both men turn over all weapons to law enforcement.

 At approximately 7 p.m. on the same day, September 26, Pomerenke was released from jail. Officer Smith testified that prior to being released from jail on his own, an inmate would be required to blow .00 on a preliminary breath test to demonstrate that the inmate is no longer intoxicated. Officer Smith testified that when he made contact with Pomerenke on the evening of September 26, he observed nothing that would have indicated Pomerenke was under the influence of alcohol.

 Officer Smith was contacted via radio and asked to pick Pomerenke up at the jail and transport him to his home for the purpose of taking custody of Pomerenke's firearms. Officer Smith testified Pomerenke made the request for transportation and to have an officer come to his home to take custody of his firearms. Officer Smith picked Pomerenke up at the jail and drove him to his house. Pomerenke rode in the front passenger seat of Officer Smith's patrol car without any handcuffs or any other type of

restraint. Upon arrival there, the house was discovered to be locked and Pomerenke did not have the keys with him. Pomerenke decided to enter the house through an open, unlocked window. He then let Officer Smith in through the front door. Officer Smith asked Pomerenke where Mr. Zastrow stayed and Pomerenke indicated the living room/dining room area.

With Pomerenke's permission, Officer Smith, Sergeant Terry Coon, and Pomerenke began collecting firearms from throughout the house. Some 29 firearms were collected--some rifles, revolvers, pistols, shotguns and two BB guns. Some of these firearms were in a locked gun safe that Pomerenke unlocked and emptied of firearms, giving the guns to the officers. Some of the firearms were located in the living room/dining room area.

Upon collecting all these guns in the house, Pomerenke told Officer Smith he had two more firearms in his truck parked outside that he wished to turn over to him. Pomerenke could not locate his truck keys. Officer Smith went outside and checked the two front doors to the truck, both of which were locked. Officer Smith left Pomerenke's house shortly thereafter with the 29 firearms collected thus far.

Almost immediately after leaving, Officer Smith telephoned Sergeant Coon because he was worried about Pomerenke's mental state and leaving him with access to the two firearms in the truck. Sergeant Coon instructed Officer Smith to return to Pomerenke's house and attempt to get the firearms from the truck.

Officer Smith came back to the home and knocked on the front door. The officer could see into the house and observed Pomerenke standing in the living room area. Pomerenke answered the door. Officer Smith asked Pomerenke if he could enter and assist Pomerenke in finding his truck keys. Pomerenke consented. Officer Smith entered the home a second time and began searching for Pomerenke's keys. Pomerenke was also searching, including searching in the living room/dining room area.

Under a cushion on the loveseat where Mr. Zastrow slept Officer Smith discovered a shotgun with a short barrel which is the subject of the charges Mr. Zastrow faces in this case. No part of the shotgun was visible prior to Officer Smith removing the loveseat cushion. Mr. Zastrow later made incriminating statements regarding the ownership of the shotgun. Officer Smith never had a search warrant for any of the searches he conducted of the Pomerenke residence on September 26.

4

Docket 34 at 2-6 (footnotes omitted).

## DISCUSSION

The Fourth Amendment provides for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. Warrantless searches and seizures carried on inside an individual's home are presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 559 (2004). "It is therefore well-established that the police may not invade a person's house without a warrant except under very limited circumstances, such as the presence of exigent circumstances or an occupant's consent." *United States v. McMullin*, 576 F.3d 810, 815 (8th Cir. 2009). And while "the burden of proof is on the defendant who seeks to suppress evidence," the burden is "on the government to justify a warrantless search." *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984); *see also United States v. Hughes*, 517 F.3d 1013, 1019 (8th Cir. 2008).

The third-party consent doctrine can provide justification for the warrantless search of a home. The Supreme Court held in *United States v. Matlock*, 415 U.S. 164, 171 (1974), that the government may conduct a warrantless search after obtaining consent voluntarily given from a third party "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." The Court explained that

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property . . . but rests rather on mutual use of the property by

5

> persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id.* at n.7. And in *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990), the Court considered whether a third party's consent could vitiate a warrantless search even if the third party did not have common authority over the premises. The Court held that it could, but only if the officer reasonably believed that the third party had common authority to consent to the search. *Id.* at 186. The test is an objective one: "would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Id.* at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Thus, the court considers the totality of the circumstances available to the officer at the time the third party's consent is given. *See United States v. Weston*, 443 F.3d 661, 668 (8th Cir. 2006).

Here, the magistrate judge found that Pomerenke had joint access and control over the living room/dining room area. Thus, the magistrate judge found that Pomerenke could consent, and did consent, to a search of the area. Zastrow does not object to the magistrate judge's formulation of the third-party consent doctrine or any of the case law cited in the report. Rather, Zastrow objects to the magistrate judge's conclusion. He argues that

> once . . . Pomerenke informed Officer Smith that the living room was 'Zastrow's room[,]' [Officer] Smith could no[] longer reasonably believe, given the totality of the circumstances, that Pomerenke had the authority to consent to a search of that room.

6

Docket 35 at 1.

Zastrow's objection, however, is directed at an issue the magistrate judge did not resolve and did not need to resolve. The issue of whether it was reasonable for Officer Smith to believe that Pomerenke had common authority to consent to the search is relevant only if Pomerenke did not, in fact, have common authority over the area. *See Rodriguez,* 497 U.S. at 181-183 (concluding that the third party did not have actual authority over the apartment and then addressing whether, nonetheless, it was reasonable for the officers to rely on the third party's apparent authority). The magistrate judge found that Pomerenke had joint access and control over the area (*i.e.*, actual common authority) and, thus, the magistrate judge did not need to address whether it was reasonable for Officer Smith to believe that Pomerenke had such authority over the area (*i.e.*, apparent common authority). The Supreme Court drew a distinction between these two types of third party consent theories in *Rodriguez* and, more recently, in *Georgia v. Randolph,* 547 U.S. 103 (2006). There, the Court explained that

> [The consenter] might be . . . a fellow occupant who shares common authority over property when the suspect is absent, and the exception for consent extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant.

*Id.* at 109 (internal citations omitted); *see also United States v. Almeida-Perez,* 549 F.3d 1162, 1170 (8th Cir. 2008) (explaining that whether an individual has

7

common authority is a question of fact while the issue of whether an individual has apparent authority is a question of law).

The court agrees with the magistrate judge's finding that Pomerenke had joint access and control over the living room/dining room area. The facts demonstrate that Pomerenke leased the residence in his name, that he regularly needed to traverse the area to get to his own bedroom, the kitchen, and the basement, and that the area was still functional as a living room even though Zastrow slept there (*i.e.*, it contained chairs and a small table in addition to the loveseat). The facts demonstrate that Pomerenke "had unrestricted and joint access to the entire residence[.]" *United States v. Nichols*, 574 F.3d 633, 636 (8th Cir. 2009). The Eighth Circuit has recognized that

> Most consent cases involve jointly occupied places and a roommate or cotenant who allows a search of shared space. In these instances, the factual finding of common authority makes intuitive sense. The space is jointly resided in; the parties expect intrusions into each other's limited space as a function of communal living.

*United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003) (internal citation omitted).[1] Likewise, a finding that Pomerenke had common authority makes intuitive sense under these facts.

Even if the court disagreed with the magistrate judge's conclusion that Pomerenke had common authority over the living room/dining room area, the court concludes that Pomerenke had apparent authority over the area. *Cf. Nichols*, 574 F.3d at 636 ("Additionally, we note that even had [the third party]

---

[1] The court cautioned that it "[did] not mean to establish a *per se* rule for shared space." *James*, 353 F.3d at 613 n.2. The court's explanation, however, is an apt description for the facts of this case.

lacked common authority, her consent was still effective because police officers had reason to believe that she had common authority."). The facts demonstrate that no part of the area was partitioned off by a screen or curtain to create a zone of exclusivity around the loveseat, and the loveseat itself was not marked in any way to suggest that only Zastrow could use it. *Almeida-Perez*, 549 F.3d at 1172 (explaining that "if part of a dwelling is appropriated for the exclusive use of one occupant, other inmates of the house have no right to consent to police entry of the space from which they themselves are excluded"). Although Pomerenke indicated that Zastrow was staying in the living room/dining room area, that did not mean automatically that Pomerenke could not reasonably convey his own authority to be there. In fact, Pomerenke was searching the living room/dining room area with Officer Smith while he was looking for firearms. And the loveseat itself was not a sealed container, a desk, a closet, or any other item that would suggest from its ordinary use and appearance that it would be used to store personal possessions. *See, e.g., James,* 353 F.3d at 615 (noting the searched property was marked with stickers that read "confidential," "personal," and "private"); *United States v. Clark*, 409 F.3d 1039, 1044 (8th Cir. 2005) (observing that items in a closet "were not clearly labeled or specifically identified as belonging only to Clark"). Thus, it was reasonable for Officer Smith to believe that Pomerenke had common authority over the area and, therefore, Pomerenke's consent to search the area permitted Officer Smith to do so.

**CONCLUSION**

Pomerenke had sufficient authority, whether actual or apparent, over the living room/dining room area. His consent, therefore, justified Officer Smith's warrantless search of the area. The court agrees with the magistrate judge's conclusion that Zastrow's motion to suppress be denied. Thus, it is

ORDERED that the report and recommendation (Docket 34) to deny Zastrow's motion to suppress is adopted as supplemented herein.

Dated June 24, 2016.

BY THE COURT:

*/s/Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE